Thank you, Your Honor. If it may please the Court, my name is Colin Stevens. I represent the appellant in this case, Scott Bummer. The District Court at the pretrial proceedings made two somewhat overlapping but distinct errors. I presented two distinct arguments on appeal. I don't know if the Court has a preference as to which one I address first. I do have a question for you as to what we'll call the Rule 43 issue. Very well. I understand there was a telephonic conference that discussed the Franks hearing, and I think the parties disagree as to how significant that hearing was. Was there ever an objection by either party saying, wait a second, Mr. Bummer needs to be here? No, there was not, Your Honor. So in light of there being no objection, what is this? Do we review for harmlessness? Do we review for plain error? What do we do in this context? I guess I would review it for plain error, Your Honor, given the constitutional significance. I'm sure my counsel for the government would disagree with me on that. Well, I think he probably would want us to review it for plain error. I think you'd want us to review it for harmlessness because plain error is a tougher standard for you to win under. But I think I can win it under plain error. That's fair enough. I mean, what that telephonic hearing did was it completely reversed the Franks proceedings that had started. The district court itself indicated that it made this erroneous decision which benefited Mr. Bummer. And at that conference, the district court essentially said, all right, I'm taking away the benefit. I'm taking away all of the evidence that Mr. Bummer was able to elicit through cross-examination, excuse me, on the factual omissions and the erroneous statements that were made in the submitting officer's warrant or application. So essentially what the district court did is I'm taking this away, and I think Mr. Bummer's absence at that conference, whether it was objected to or not, was error, plain. It was harmful under no matter what standard. What was the harm? What would he have contributed had he been there? Well, Your Honor, it's difficult to sort of look through that glass darkly, right? I mean, what he could have essentially contributed was an overall understanding of the proceedings, where his case was going. I mean, I would submit that on the December 7th hearing, things were going fairly well for Mr. Bummer. The district court did acknowledge that it was, that was a favorable error on the district court's part. December 8th, things start to go really poorly. I cannot tell you what Mr. Bummer could have contributed. I wasn't trial counsel. I know that Mr. Bummer has some learning problems. Perhaps, you know, he walked into court on the next day expecting his counsel to be able to cross-examine Detective Duffy to potentially get the information from this regarding the identity of this C.I. that really provides the cornerstone for the affidavit and for the probable cause. What he could have contributed, I don't know, but I don't think, I don't think that's the standard the Court should look at, is what could he have contributed. I think the standard really is the monumental effect that that telephonic conference had on his case, and he should have at least had the opportunity to be present. Moving on to the Franks process, I guess I just want to address a few things. The district court relied heavily on Reeves, U.S. v. Reeves. That case is really very different from what happened in Mr. Bummer's case. In Reeves, the warrant court, the magistrate that issued the warrant, had the benefit of a reliability analysis of the confidential informant in that case. In that case, law enforcement, in the affidavit for the warrant, indicated that the C.I. was reliable because he provided past information on three previous warrants. Each warrant had produced narcotic seizures. The C.I. had also done three controlled buys. And so it's that sort of reliability of the informant that, in this case, the state district court that issued the warrant was deprived of that. I mean, ultimately, the district court did the in-camera review, established the reliability, but I think that misses the point. What the district court in that case, in this case, was looking at is, all right, under a Franks process and under Reeves, does the defendant have the right to learn the identity of the confidential informant? That's a different analysis than what Mr. Bummer was asking under his motion to suppress, was essentially, look, the district court, the state district court that issued the warrant, was deprived of its ability to have an independent determination of the reliability of this C.I. And in light of the errors that were in the warrant application regarding the reliability of Ms. Bennett, who said Mr. Amato was traveling to Helena to buy from Mr. Bummer, that wasn't true. She knew he was going to Helena. She knew that her source wasn't, she didn't know her source was buying from Mr. Bummer. As I addressed in the briefs, the Ping evidence is innocent at best. And then we have this C.I. that evolves essentially from, well, in the warrant application, the C.I. says Mr. Bummer's buying large amounts of meth from Mr. Anorkot in Arizona. And then when trial counsel asks for the identity of the C.I., I believe it's sealed Exhibit 13 that was submitted at the evidentiary hearing. It isn't, oh, no, well, we know he's buying. It's word on the street tells us that he's buying from Mr. Anorkot in Arizona. We don't actually have reliable information. We just have word on the street. And then at some point, this in-camera review session happens. There's no record of it. And, I mean, it just, it makes it really somewhat impossible for this court to review it on appeal. I guess the reliability. Counsel, what do you mean there's no record of it? I don't believe there's a record of the in-camera session. So, but Judge Morris said that he did go back and look at the CD himself on the record. Yes, Your Honor. I'm sorry. There's no transcript of what occurred at the in-camera proceeding when Judge Morris questioned the law enforcement officer on the reliability factors of the C.I. Oh. That's what I mean. Is there no transcript of that? I don't know the answer to that, Your Honor. I was not trial counsel. Because I know we had trouble getting the CD. It didn't come up with the record. But we were ultimately able to get it. Yes, Your Honor. That's correct. I assumed that because it was in-camera, because it dealt with the confidential nature of the identity of the C.I., that Judge Morris just sort of did it off the record. I don't know the answer to that. And I will reserve the rest of my time. Thank you. Thank you, counsel. Good morning. May it please the Court. Keith Jones for the United States. Judge Owens, to go directly to your question on the Rule 43 issue, this case presents a case similar to U.S. v. Veatch, which is a 1981 Ninth Circuit case at 674 F. 2nd, 1217. That was a Rule 43 case as well. And the Court noted specifically that defense counsel did not object to numerous sidebars where the defendant was not invited to participate. It was just between counsel. And that was one of the factors that the Court considered in finding that defendant didn't preserve that issue to be able to contest that he should have been able to participate. And in Veatch, to analyze it under Rule 43, the Court identified two prongs, whether the defendant's absence frustrated the fairness of the proceeding and then whether the defendant was prejudiced. And here, as we've alluded to already, defendant's absence from the teleconference did not frustrate the fairness of the proceeding, because on the second morning, Judge Morris, in open court in front of the defendant, engaged in a complete summary of what had happened throughout the first day and then what happened at the teleconference. And Judge Morris invited both counsel to kind of supplement that summary, as he described to the defendant, what had taken place so far, what took place at the teleconference, and the procedure that the Court was going to follow under Reeves to go into the in-camera review. So to the extent that the defendant was prejudiced by not being able to attend the teleconference, that prejudice was diminished and minimized by the Court presenting that summary, inviting the defendant to argue as necessary, ask questions as necessary through his counsel on the beginning of the second day. Are you conceding that Mr. Bummer should have been allowed to participate in the telephonic conference? No, Judge Wardlaw. Two answers to that. In order to determine whether that proceeding was a critical stage, we would go through the Hovey analysis that you wrote. But secondarily, we don't even have to go through that, because the second step of the analysis is whether it's subject to a harmless error analysis. The exclusion from a critical stage is not constitutional error or structural error. It is trial error. And so we would look at, was his exclusion from the teleconference a harmless error? And to the extent that he was not able to participate in the teleconference, if that had been the end of the analysis, then perhaps it could have been harmless. But because — Counsel, I'm sorry. I want you to know there's limited time. The part I find troubling about this is not so much the harmless prong as it is the fact that when proceedings ended the day before the telephonic conference, Mr. Bummer thought he was going to have a Franks hearing. And there were some issues with that affidavit, some portions of it lacking personal knowledge that were testified to. And so he thought he was getting the Franks hearing, and when he came back on Wednesday, he wasn't getting the Franks hearing. And that just seems a little troublesome, this kind of, I almost want to say lackadaisical way these proceedings were handled, that there shouldn't have been this telephonic conference where an important ruling was altered, and there wasn't a CD by the judge alone without a record of it. It just seemed like there were a lot of not strictly quite by-the-book procedural problems here. Yes, Judge Wardlaw, to the extent that Judge Morris deviated from the procedure in Reeves, which he could have followed at the beginning of the day and identified that one of the problems that the defendant had with the affidavit was the identity of this confidential informant and relying on confidential informant information, the judge could have initiated what would be the Reeves protocol at that moment on the first day, but the judge didn't. And the judge allowed a day of evidence-gathering and testimony by the defense to their benefit. At the conclusion of that day, it was the defense counsel that suggested that he was coming up against wanting to ask the identity of this confidential informant and that Reeves would be the proper procedure to follow of going to an in-camera review. I think that's what kind of triggered in the judge's mind to look at Reeves and call the teleconference. To be clear, the teleconference was not necessary. The teleconference didn't have to happen. The judge could have come back in on Thursday morning and said, you know what, I've looked at Reeves, counsel, it was your suggestion, and we're turning this thing around, going to an in-camera review. This judge is to be commended for taking the time to gather counsel together, opening the teleconference with, okay, counsel, where do we stand, allowing them to both state where they believe the case was, and then recognizing that the court made a mistake in going to an evidentiary hearing prematurely. And so the court did a good job of providing a very clear record for this court to review. And then on the second day of the evidentiary hearing, summarizing all of that and providing the defendant an opportunity to the extent that he wasn't able to participate in the teleconference to still engage in identifying the proper procedure and moving forward. So to the extent that the defendant complains that he didn't get enough of a benefit from the court's error, that should fall on deaf ears. He got a full day of evidence that he otherwise wouldn't have gotten and is now asking for more. I'd like to turn briefly to probable cause. And, Judge Warder, you've kind of hinted at this as well. The district court judge found three categories of facts that were sufficient to support a probable cause determination and deny the motion to suppress. The pings that were corroborated by observations of the travel route that Mr. Amato took to visit the defendant. Secondarily, that Mr. Amato was arrested with four ounces of meth on his person. And third, that Mr. Amato identified that he purchased the meth from the defendant. It was those three categories of facts that the district court found as a sufficient basis to support the determination of probable cause and gave deference to the district court judge, the state court judge that issued the warrant. So if Mr. Amato wasn't reliable, then you have two items. One, the pings, which could be neutral, and the, you know, Amato's had the meth on his person. So is that enough? I don't know if that would be enough or not. That's not the case that Judge Morris was presented with and that's not the case that the state court judge was presented with. And Amato's reliability was a finding of fact entered by Judge Morris after watching the video and also after receiving a day's testimony of the investigators who found that Amato was reliable. Judge Morris had the benefit of watching their examination as well in order to make that determination. And... No, counsel. Counsel, I reviewed the CD yesterday. I have to admit I didn't watch the entire video because it's a long video, but I watched significant portions of it. I don't know how you tell from that video whether someone's high on meth or not. I don't know how Judge Morris could make that finding. I mean, he exhibited all sorts of different effects, ethics, I mean. He was hostile sometimes. He was agitated sometimes. Sometimes he looked like he was about to fall asleep. So I don't know how you make that finding. Yes, Judge Wardlaw. I think that the important part of the finding is that Judge Morris agreed with the investigators when they said, we don't know if he was high on meth or not. We didn't test him before interrogating him. But we found him reliable. And Judge Morris said, yeah, there's nothing in the video that shows that that testimony was not reliable. So as you've seen in the video, Mr. Amato had his personality. I think it was notable that the times that he got angriest, he routinely followed that up with, we have to hurry because if these guys find out I'm arrested, my family might be at stake here. He was concerned about the safety of his family, and his agitation, I think, was commensurate with that. He clearly did not want to give up the information he was giving up. I mean, there's definite reluctance there. But what if we remove Mr. Amato? What remaining probable cause is there to support the issuance of the warrant? As Judge Morris, and I apologize, I'm going over my time. As Judge Morris found on page 76, 7576 of the record, Judge Morris laid out various ping information that placed Mr. Amato with Mr. Bummer on at least three occasions, either at his business or at his residence, and observations of Mr. Amato traveling to and from those areas, and then Mr. Amato being arrested with the meth on his possession. If we throw out that final kind of finding that Mr. Amato identified Mr. Bummer as the source of that, then we would go back to looking at the confidential informants information with respect to Mr. Bummer being a known provider in Helena. And that information is what Judge Morris reviewed in camera and came back out and said, I find that confidential informants identity would not enable the defense counsel to overcome or aid in the determination that there was reckless disregard for the truth in the warrant affidavit. The identity of that confidential informant wouldn't help in that. And even if that — the second finding that Judge Morris laid out on that was even if that confidential informants identity was known, that those two lines in the search warrant affidavit are not necessary for the determination of probable cause. If we're stepping outside of these facts to the hypothetical of Judge Morris not relying on the Amato video, I think that he might have pivoted back to that. But I can't tell you. If there's nothing further, we respectfully request that you affirm. Thank you, counsel. Thank you. Thank you. I disagree, obviously, with the government. If you remove Amato, I mean, so much of the probable cause determination of this case rests on shaky ground. I watched the whole video. It was excruciating. The last 30 minutes, from my perspective, I mean, I'm a criminal defense attorney. I deal with a lot of people on math. I think he's clearly high. I can't make a determination or say that the district court didn't see something I didn't. I would disagree that the law enforcement officers found Mr. Amato credible. I think if you watch the entire three and a half hours, there are definitely very sarcastic statements made by Detective Cruz, who is the officer on the left-hand side of the screen as you watch the video. I believe at one point he makes some very sarcastic comment. He also tells Mr. Amato several times, you're not telling us anything we already know. So I think this case is governed by, really, this Court's decision in Hall, where you have a whole bunch of neutral, maybe innocent or neutral facts, ping information. You have a statement in a warrant affidavit that is, at best, questionable. I would say, at worst, false. The confidential informant, that the statement is attributable. Mr. Amato is going to Helena to meet with Mr. Bummer to buy meth. The person who said that wasn't interviewed by law enforcement until three days after that statement was made. And... But isn't Hall distinguishable? Yes, Your Honor, it is distinguishable on many facts. I mean, yeah, these are fact-intensive cases, yes. So, I mean, I would say this case is stronger, or Hall is a little bit stronger. But I think that what was developed in the Franks hearing significantly undermines the probable cause in this case. And I think, I mean, I just, the way the district court went about it was somewhat problematic because he heard all of this evidence, he watched the tape, he engaged in this in-camera discussion that Mr. Bummer nor his counsel were privy to, and then came back and said, okay, I think probable cause happened here. And I just think, A, it's probably passe. I just don't think that's fair when you factor in that he was excluded from the telephonic hearing, but I also don't think it satisfies probable cause once you extract all the questionable stuff. Thank you, counsel, very much. Thank you, Your Honors. Thank you to both counsel for their briefing and argument in this case. This matter is submitted.
judges: Wardlaw, Owens, Lefkow